# STATE OF MICHIGAN

# COURT OF APPEALS

In re ASBERRY/HOWARD/SAXTON, Minors.

UNPUBLISHED
December 20, 2018

No. 343681
Wayne Circuit Court
Family Division
LC No. 18-000168-NA

In re M N ASBERRY, Minor.

No. 343682
Wayne Circuit Court
Family Division
LC No. 18-000168-NA

Before: CAVANAGH, P.J., and SERVITTO and CAMERON, JJ.

PER CURIAM.

In Docket No. 343681, respondent mother appeals as of right an order terminating her parental rights to her minor children, MNA, AKA, AMS, DLH, and DMH, pursuant to MCL 712A.19b(3)(b)(*ii*) (child suffered physical or sexual abuse, parent failed to prevent the abuse, and there is a reasonable likelihood child will suffer further abuse if placed with parent), MCL 712A.19b(3)(g) (failure to provide proper care and custody and no reasonable expectation that parent will be able to provide proper care and custody within a reasonable time), and MCL 712A.19b(3)(j) (reasonable likelihood that child will be harmed if returned to parent). We affirm. In Docket No. 343682, respondent father appeals as of right an order terminating his parental rights to MNA pursuant to MCL 712A.19b(3)(b)(*ii*), (g), and (j). We affirm.

On appeal, respondent mother contends that the trial court erroneously concluded that 1) it had jurisdiction over the minor children, 2) statutory bases for termination existed, and 3) termination was in the best interests of the minor children. Respondent father contends that the trial court erroneously concluded that 1) statutory bases for termination existed, and 2) termination was in the best interests of MNA.

## I. JURISDICTION

The trial court's decision to exercise jurisdiction is reviewed for clear error in light of the court's findings of fact. *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). We defer to a trial court's factual findings at termination proceedings if those findings are not clearly

-1-

erroneous. *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009). "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). But regard must be given to the trial court's opportunity to judge the credibility of the witnesses. *In re Schadler*, 315 Mich App 406, 408-409; 890 NW2d 676 (2016) (citation omitted).

A statutory basis must exist, by a preponderance of the evidence, for a trial court to properly exercise jurisdiction. *In re BZ*, 264 Mich App at 295. In exercising jurisdiction, the trial court must examine the circumstances as they existed when the petition was filed. *In re MU*, 264 Mich App 270, 279; 690 NW2d 495 (2004). MCL 712.A.2(b)(1) and (2) provide jurisdiction to the trial court over minors:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .
>
> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. [MCL 712A.2(b)(1) and (2).]

In this case, the petitioning representative of the Michigan Department of Health and Human Services (DHHS), Camille Young, testified that, at the time the petition was filed, respondent mother was homeless and unable to provide appropriate and suitable housing for the minor children. The arrangements organized by respondent mother—to place MNA, AKA, and AMS in a home with someone respondent mother believed to have previously sexually assaulted MNA—put all three children at substantial risk of harm to their health and mental well-being. The unsuitability of the home by reason of neglect, criminality, depravity, or all three, was evidenced by the reasonably predictable sexual assault that occurred at the hands of that same individual, and the pornographic imagery to which MNA was both exposed to and the subject of. We are not left with a definite and firm conviction that the trial court erred when it determined that the evidence preponderated in favor of jurisdiction over MNA, AKA, and AMS, and that the doctrine of anticipatory neglect further established jurisdiction over DLH and DMH. See *In re BZ*, 264 Mich App at 296 (explaining that, with respect to jurisdiction, evidence of how a parent treats one child can be considered as evidence of how a parent will treat other children).

We note respondent mother's contentions that 1) she was never, in fact, homeless, and 2) she was never aware that the individual who perpetrated the sexual assault against MNA was living in the house in which she placed MNA, AKA, and AMS. First, the fact that respondent mother's testimony conflicts with the testimony of Young is an issue of credibility, and it is the role of the trier of fact to determine the credibility of the witnesses and the weight of the evidence. See *In re Schadler*, 315 Mich App at 408-409. Similarly, MNA provided testimony that suggested respondent mother—at the very least—had reason to know that the individual who assaulted MNA—her step-grandfather—was in and around the home. Coupled with the fact

-2-

that respondent mother intentionally placed MNA, AKA, and AMS with respondent father and respondent father's mother—the step-grandfather's wife—it was not clearly erroneous for the trial court to determine that respondent mother either did know or should have known that MNA's step-grandfather also lived in the house.

## II. GROUNDS FOR TERMINATION

Respondents next contend the trial court erred in determining that statutory bases for termination existed. We review the trial court's factual findings and ultimate determinations as to the statutory grounds for termination for clear error. *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014).

At least one statutory ground under MCL 712A.19b(3) must be established by clear and convincing evidence to terminate parental rights. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). The statutory provisions cited by the trial court in this case include, in pertinent part:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

\* \* \*

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

\* \* \*

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent. [MCL 712A.19b(3)(b)(*ii*), (g), and (j).]

Sufficient evidence exists to support the trial court's finding that statutory grounds were established, i.e., the trial court's determination was not clearly erroneous.

MCL 712A.19b(3)(b)(*ii*) "addresses a failure by a parent to prevent sexual abuse," *In re Martin*, 316 Mich App 73, 89; 896 NW2d 452 (2016), and is the most clearly established ground for termination as to both respondent mother and respondent father. Both respondents admitted to Young that they were aware of allegations that MNA was sexually assaulted by her step-grandfather when she was young, and both respondents admitted that they believed the allegations to be true. Respondents then knowingly allowed MNA to live in the same home as her assaulter—a clear failure to protect—leading to yet more sexual abuse. The error in judgment was substantial, and given the events after the more recent assault by MNA's step-grandfather, it was not clear error for the trial court to find that a reasonable likelihood existed that, should any of the children be returned to respondent mother or should MNA be returned to respondent father, respondents would continue to make decisions that could cause harm to the minor children.

We note that respondent mother makes the same argument with respect to this statutory ground as she does with respect to the statutory bases for jurisdiction—respondent mother contends that she had no idea MNA's step-grandfather was living in the home. The argument fails as applied to this issue for the same reason that it fails as applied to jurisdiction. First, there is evidence that respondent mother—at the very least—should have known that MNA's step-grandfather was living with respondent father, and second, it is the duty of the trial court to judge the credibility of the witnesses and weigh the evidence. Respondent mother's argument lacks merit and fails to demonstrate clear error on the part of the trial court.

Respondent father contends on appeal that subsection (3)(b)(*ii*) was not established because there was no evidence that MNA's step-grandfather was a child sex offender, and thus there was no reason for respondent father to know that MNA's step-grandfather could pose a danger to MNA. Young testified, however, that not only was respondent father aware of the allegations against MNA's step-grandfather, but that respondent father believed them. MNA's step-grandfather was purportedly accused of sexual assault by three of respondent father's cousins, and according to Young, respondent father recalled that when he was 11 years old, his cousin woke him up in tears alleging that the step-grandfather "tried to have sex with her." Respondent father has also failed to establish clear error.

The evidence also supports the trial court's reliance on MCL 712A.19b(3)(g) and (j). At the time of this matter, MCL 712A.19b(3)(g) provided grounds for termination where "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." Under MCL 712A.19b(3)(j) termination is proper where "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned" to the parent.

This Court has found that both subsection (3)(g) and subsection (3)(j) are triggered where a respondent-parent causes or fails to safeguard a child from intentional abuses, even where the specific perpetrator is unknown. See *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011) (holding that termination of parental rights under subsections (3)(g) and (3)(j) "is permissible even in the absence of determinative evidence regarding the identity of the perpetrator when the evidence shows that the respondents must have either caused the intentional

injuries or failed to safeguard the children from injury"). Of course, in this case, the exact perpetrator was known, and respondents still failed to safeguard MNA from the sexual abuse.

Additionally, petitioner alleged 12 former CPS investigations of respondent mother, ranging from allegations of sexual abuse to improper supervision. Also, Young testified that—contrary to respondent mother's assertions—respondent mother was homeless and unable to provide a stable, safe environment. Taken together, Young's testimony alone provided sufficient evidence to establish grounds for termination of respondent mother's rights under both subsection (g) and (j). Similarly, although the trial court found insufficient evidence to support the claim that respondent father sexually assaulted MNA, the circumstances of the pornographic video of MNA found on respondent father's telephone cannot be ignored. The video had allegedly been on respondent father's telephone for at least 22 days, and someone with access to respondent father's information purportedly attempted to erase the telephone's data remotely after the telephone was confiscated—suggesting that respondent father may have known that the telephone contained the recording. In any event, the sheer existence of the video on respondent father's telephone evidences a failure to provide a safe home and environment for MNA, and there was no evidence that respondent father could protect MNA from similar harm were she to be returned to his care. See *In re Schadler*, 315 Mich App at 410 (only one ground for termination need be established).

### III. BEST-INTERESTS DETERMINATION

Finally, respondents contend that the trial court erred in determining that termination served the best interests of the minor children.

Even if a statutory ground for termination is established by clear and convincing evidence, a trial court "cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). In making its best-interest determination, the trial court may consider all of the evidence. *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016). The child is the focus at the best-interest stage, not the parent. *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015) (citation omitted).

"To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include 'the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.' " *In re White*, 303 Mich App at 713, quoting *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). "Other considerations include the length of time the child was in care, the likelihood that 'the child could be returned to [the] parents' home within the foreseeable future, if at all,' and compliance with the case service plan." *In re Payne/Pumphrey/Fortson*, 311 Mich App at 64, quoting *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the child[]'s well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. Finally, "a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a)," and relative placement should

be an "explicit factor" in the best-interest determination. *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010).

Both respondent mother and respondent father contend that the trial court failed to give adequate weight to the bonds between the parents and the minor children, and that the court failed to consider the placement of the minor children with relatives. Both arguments are without merit.

First, Young testified that the minor children lacked stability, but were doing well in their respective placements, and that it would serve the minor children's best interests to keep them in their placements. Other than testimony that MNA had developed a history of running away, there was very little if any evidence presented that would speak to the bond between respondent mother and any one of the minor children, or respondent father and MNA, and accordingly, it cannot be said that the trial court clearly erred by failing to weigh the bond between respondent and the minor children more heavily.

Second, whether an individual is considered a "relative" for the purposes of relative placement is governed by MCL 712A.13a, which provides, in pertinent part:

> (j) "Relative" means an individual who is at least 18 years of age and related to the child by blood, marriage, or adoption, as grandparent, great-grandparent, great-great grandparent, aunt or uncle, great-aunt or great-uncle, great-great-aunt or great-great-uncle, sibling, stepsibling, nephew or niece, first cousin or first cousin once removed, and the spouse of any of the above, even after the marriage has ended by death or divorce. [MCL 712A.13a(1)(j).]

MNA, AKA, and AMS were placed with godparents, and a godparent is not a "relative" under MCL 712A.19a. Similarly, DLH and DMH were placed with their biological father, M. Howard, who also was not a relative pursuant to the statute. See *In re Schadler*, 315 Mich App at 413 (explaining that a biological parent is not a "relative" for the purposes of MCL 712A.19a). Accordingly, the trial court did not err in failing to treat the minor children's placements as relative placements.

In summary, the trial court did not clearly err in determining that termination was in the best interests of the minor children.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto
/s/ Thomas C. Cameron

-6-